[S. F. No. 15039.   In Bank.—January 28, 1936.]

CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Appellant, v. COUNTY OF ALAMEDA (a Political Subdivision of the State of California), Respondent.

John J. O'Toole, City Attorney, and Dion R. Holm, Assistant City Attorney, for Appellant.

Earl Warren, District Attorney, Alameda, Ralph E. Hoyt, Chief Assistant District Attorney, and James H. Coakley, Deputy District Attorney, for Respondent.

THE COURT.—This is an appeal from a judgment in favor of the defendant in an action to recover taxes paid under protest.

Prior to the first Monday in March, 1930, the Spring Valley Water Company owned approximately 37,500 acres of land in Alameda County with improvements thereon, which land and improvements were held by the company as properties useful in supplying water to the inhabitants of San Francisco and contiguous territory. At the same time the company was the owner of rights to take and divert water from Alameda Creek and its tributary branches in Washington and Pleasanton Townships in Alameda County. These rights the company had acquired by purchase or condemnation from owners of land riparian to Alameda Creek for business, commercial and nonriparian purposes.

Before noon on the first Monday in March, 1930, the City and County of San Francisco acquired the above-described lands, improvements and water rights by purchase from the Spring Valley Water Company. While the ownership thereof was in the company the assessor of Alameda County regularly assessed to the company those lands, improvements and water rights and pursuant to said assessments taxes were paid by the company to that county. For the fiscal year 1930–1931 said property was assessed and taxes thereon were collected from

the plaintiff City and County the same as theretofore from the plaintiff's predecessor in interest.

No question was raised by the plaintiff as to the propriety of the taxation of the 37,500 acres of land and improvements thereon in Alameda County, but it took the position that the water rights which had been acquired from riparian owners on Alameda Creek were neither "lands" nor "improvements thereon" as contemplated by the amendment of section 1 of article XIII of the Constitution in 1914, and accordingly paid the tax on said water rights under protest and now seeks to recover the same, contending that said water rights are exempt from taxation.

Prior to 1914 subdivision 1 of article XIII of the state Constitution provided that all property in this state, with certain exceptions not here pertinent, should be taxed in proportion to its value to be ascertained as provided by law; that the word "property" should include "moneys, credits, bonds, stocks, dues, franchises, and all other matters and things, real, personal, and mixed, capable of private ownership"; but provided that certain other designated property "and such as may belong to the United States, this state, or to any county, city and county, or municipal corporation within the state shall be exempt from taxation". In 1914 the section was amended by adding immediately after the last-quoted words the following: "except such lands and the improvements thereon located outside the county, city and county, or municipal corporation owning the same as were subject to taxation at the time of the acquisition of the same by said county, city and county, or municipal corporation; provided that no improvements of any character whatever constructed by any county, city and county or municipal corporation shall be subject to taxation. All lands or improvements thereon, belonging to any county, city and county, or municipal corporation not exempt from taxation, shall be assessed by the assessor of the county, city and county, or municipal corporation in which said lands and improvements are located, and said assessment shall be subject to review, equalization and adjustment by the state board of equalization."

The undoubted purpose of the amendment was primarily to safeguard the tax revenues of smaller counties wherein large municipal corporations had purchased, or would acquire, extensive holdings and which would, except for the

amendment, be exempt from local taxation. With the exemption in force, the serious financial embarrassment of the counties in which the holdings were situated was a reality. The argument sent to the electors of the state when the amendment was proposed also discloses that, unless the amendment be adopted, impending disaster would result to smaller counties by the removal from the local tax rolls of lands and water rights acquired and to be utilized in connection with the acquisition or extension of municipal water supplies such as were then in progress by the City and County of San Francisco and the city of Los Angeles. The adoption of the amendment was evidence that the acquisition of such lands and water rights should be without prejudice to the outlying counties whose existence from an economic and governmental standpoint depended upon the tax revenues derived therefrom. It was therefore provided that such lands and improvements thereon as were taxable at the time of the acquisition of the same by municipalities should continue to be taxable and should not be exempt from local taxation. The fact that the continuing right of taxation should in some instances inure to the benefit of counties not so sorely pressed by reason of the prior exemption, is but an incident and cannot disturb the manifest and general operation of the amendment. The question is, whether the water rights acquired by the plaintiff by purchase from the Spring Valley Water Company were included within the term "land" as used in the constitutional amendment and as such therefore separately assessable in Alameda County.

The case was tried on a stipulation of facts from which it appears that the rights acquired by the Spring Valley Water Company were rights to divert the water of Alameda Creek as against lands riparian to the creek. While the right to the waters of the stream is a usufructuary right inuring to the benefit of riparian lands, such rights are inseparably annexed to the soil and pass with a grant of the land, not necessarily as an easement or appurtenance but as parcel of the land itself. (*Miller & Lux* v. *Janus Co.*, 179 Cal. 189 [178 Pac. 716].) When the owner has divested himself of a right such as here assessed to the plaintiff, he has parted with an interest in the land as contemplated by the constitutional amendment. It must be assumed that by the grant he has stripped the land of much of its value. In some cases the

value of the land severed from the water right might well be negligible for taxing purposes. In such event the county wherein it is situated would be deprived of tax revenues from it the same as if the owner had conveyed to the municipality the title to the land. Such a result would subvert the purposes of the constitutional amendment and render the same ineffectual for the purposes intended.

The conclusion seems irresistible that when the water rights were owned by the riparians, they were a part of the land itself and formed an important element in the valuation of the land for taxing purposes; that when those rights were severed from the land the valuation of the land for purposes of taxation was or might be materially reduced, and when so severed they should not lose the characteristics which had theretofore attached to them, taking into consideration the objects and purposes of the constitutional amendment. When acquired by the plaintiff they should therefore be deemed to retain those characteristics the same as when owned by the plaintiff's predecessor in interest.

The judgment is affirmed.