[Civ. No. 6043.   Fourth Dist.   Mar. 28, 1960.]

NORTH KERN WATER STORAGE DISTRICT, Appellant,
v. COUNTY OF KERN, Respondent.

Baker, Palmer, Wall & Raymond for Appellant.

Roy Gargano, County Counsel, and Rex R. Mull, Chief Deputy County Counsel, for Respondent.

COUGHLIN, J.—This is an appeal from a judgment denying plaintiff's right to recover taxes paid by it under protest.

Section 1 of article XIII of the California Constitution provides that property of a "municipal corporation within

this State shall be exempt from taxation, except such land and the improvements thereon located outside of the . . . municipal corporation owning the same as were subject to taxation at the time of the acquisition of the same by said . . . municipal corporation.''

The plaintiff is a water storage district which it alleges, and the defendant concedes, is a municipal corporation within the meaning of the aforesaid section of the Constitution. This allegation and concession are based on principles governing the decision in *Rock Creek Water District* v. *County of Calaveras,* 29 Cal.2d 7 [172 P.2d 863] which held that a water district is such a municipal corporation.

On January 1, 1952, the Kern County Land Company, a corporation and several other corporations, being subsidiaries of the land company, as first parties, and the plaintiff North Kern Water Storage District, as second party, executed an agreement involving certain water rights which are the subject of this controversy. First party was referred to therein as the ''Companies'' and second party as the ''District.'' By this agreement the Companies ''agree that the district . . . shall have the right in perpetuity, subject to the provisions of this agreement, to divert, transport to the District, and use so much of the water accruing to the water rights'' owned by the Companies, not to exceed a maximum amount pursuant to a prescribed monthly schedule. The Companies reserve the right to ''divert and use all such water, except the water actually diverted by the District pursuant to this agreement.'' The following restrictions were placed on the purposes and place of use by the District: ''Any and all waters which shall be diverted by the District from the Kern River pursuant to this agreement may be used for the purpose of irrigation, stock watering and underground water replenishment and for no other purpose or purposes whatsoever,'' and, ''Any and all waters diverted by the District from the Kern River hereunder may be used within the present boundaries of the District, but not elsewhere.'' It was further provided that ''the District shall have no right to assign this agreement, either voluntarily or by operation of law, without the prior written consent of the above-named Kern County Land Company.''

The Companies' water rights are described in the agreement as follows:

''The water rights constituting the subject of this agreement are those certain rights to divert water from the Kern

River in Kern County, California, which are known and identified by the following names, priority dates and quantities:'' then followed a specific designation of names, priority dates and quantities and a recital that these rights were subject to the claims of other parties. These claims were specifically described. Under this agreement, the plaintiff diverts water from the Kern River; causes it to be transported by canals, pursuant to another agreement contemporaneously executed with companies owning such canals; and uses it within the district. In transit the water is commingled with other water being transported through the same canals. The places of diversion are not within the district. None of the land in the district adjoins the Kern River.

In 1957, the assessor of Kern County, by an escape assessment proceeding covering the years 1955, 1956 and 1957, assessed the water rights acquired by the plaintiff through the aforesaid agreement. A tax levy against plaintiff in the sum of $95,220 resulted. Plaintiff paid the tax under protest and brought this action to recover the amount so paid upon the ground that the water rights in question were not taxable property or, if taxable property, that they were exempt from taxation.

The cause was tried upon a stipulation of facts supplemented by evidence produced at the time of trial. From a judgment entered in favor of the defendant the plaintiff has appealed.

When this matter was argued orally before this court, counsel for plaintiff stated that the determinative question on this appeal concerned the situs of the water rights in question for taxation purposes. Section 1 of article XIII of the California Constitution, as heretofore noted, exempts from taxation all property of the plaintiff district except such lands and the improvements thereon located outside of the district as were subject to taxation at the time of acquisition. ■■■ A water right is land within the meaning of the aforesaid exception. (*San Francisco* v. *County of Alameda*, 5 Cal.2d 243 [54 P.2d 462]; *Waterford Irr. Dist.* v. *County of Stanislaus*, 102 Cal. App.2d 839 [228 P.2d 341]; *Alpaugh Irr. Dist.* v. *County of Kern*, 113 Cal.App.2d 286, 293 [248 P.2d 117]; *Oakdale Irr. Dist.* v. *County of Calaveras*, 133 Cal.App.2d 127, 135 [283 P.2d 732].) No contention is made to the contrary. Nor is it contended that the water rights owned by the companies were not ''subject to taxation'' at the time plaintiff acquired them.

Plaintiff argues that its water rights are located within its boundaries because the water obtained thereunder may be used only within those boundaries and "not elsewhere" and, consequently, are tax exempt as they do not come within the constitutional exception heretofore noted. Reliance is placed on the decision in the case of *Spring Valley Water Co.* v. *County of Alameda,* 88 Cal.App. 157 [263 P. 318], wherein the court was considering the situs of water rights and made the statement (p. 169) : "The use locates the right."

Defendant contends that the situs of plaintiff's water rights is the place of diversion; that the principles applied in the cited case sustain this contention; that the foregoing statement from that case must be considered in context with the facts therein; and that the decisions in *Waterford Irr. Dist.* v. *County of Stanislaus,* 102 Cal.App.2d 839 [228 P.2d 341], and *San Francisco* v. *County of Alameda,* 5 Cal.2d 243 [54 P.2d 462] are controlling and sustain its position.

*Spring Valley Water Co.* v. *County of Alameda, supra,* 88 Cal.App. 157, involved a consideration of the situs, for tax purposes, of water rights conveyed by riparian owners to the plaintiff water company authorizing it to divert water for nonriparian uses; pursuant thereto the plaintiff diverted water from Alameda Creek, which ran through certain districts for whose benefit the defendant county had collected taxes levied against these rights; however, the place of diversion was outside of these districts. The court held that the water rights in question were not subject to taxation by the districts because they were not riparian to any lands within the districts; that they were separate and distinct rights. Respecting the nature of the rights conferred upon the plaintiff the court stated (p. 165) : "What the plaintiff did acquire by these grants was exactly what the court found, to wit, the right to divert water from Alameda Creek for business, commercial, and nonriparian purposes at a specific point on said creek without the territorial limits of the districts here involved."

That (p. 167) : ". . . the severed right, apart from and distinct from any claim of ownership in or to the land, cannot be classed as a riparian right, a part and parcel of the soil."

That (p. 168) : ". . . when plaintiff made actual diversion of the waters of Alameda Creek at a point above the lands of the consenting land owners and, as found here, devoted the waters to a useful nonriparian use, the right of plaintiff was

and is in no sense riparian, but it is a separate and individual right . . .'';

That (p. 168) : ''With reference, then, to the right of plaintiff herein *to divert* the waters of Alameda Creek at a point without the territorial limits of the districts involved, and *to put the waters diverted to nonriparian uses without the said districts,* we hold that the situs of that right on the stream is at the point of actual diversion and not within the territorial limits of any of the districts named.'' (Emphasis added.)

And (p. 169) : ''Repeating, we hold that the situs of the right here involved is at the place of its enjoyment, *namely,* at the point of diversion. Conceding, as claimed by appellant, that a right may be taxed even if not enjoyed, nevertheless when the right and the actual user thereof combine the necessity of speculating upon the situs of an unenjoyed right does not arise. The use locates the right.'' (Emphasis added.)

The foregoing quotations clearly indicate the court did not announce a general rule that the place of use of water obtained under a water right authorizing a diversion for nonriparian uses establishes the location of that right for taxation purposes. To the contrary, the court holds that the situs of such a right ''is at the place of its enjoyment, namely, at the point of diversion.'' This holding is adverse to plaintiff's contention.

The case of *Waterford Irr. Dist.* v. *County of Stanislaus,* 102 Cal.App.2d 839 [228 P.2d 341] involved a state of facts substantially analogous to those in the case at bar. The defendant county had levied a tax upon the rights of the plaintiff district to divert and use water from the Tuolumne River. The place of diversion was located in the defendant county. These rights were purchased from a power company; were based on appropriation; and were never riparian. The water obtained under these rights was diverted from the river and then transported by a canal owned by two irrigation districts until it reached a point where it flowed into canals owned by the plaintiff district through which it was carried to lands within that district. While transported in the canal owned by the other two districts it was commingled with water diverted by those two districts from the same diversion point. The plaintiff district owned no land at the place of diversion, nor any interest in the diversion canal except the right to have its water transported therein. The defendant county claimed

that the plaintiff's water rights fell within the exception to the tax exemption provisions; that these water rights constituted land located without the boundaries of the district which was subject to taxation at the time of its acquisition. The plaintiff claimed that its water rights were not land and therefore did not come within the exception. The opinion of the court dealt primarily with the issue thus presented; rejected plaintiff's contention; held that the water rights in question were land within the meaning of the constitutional provision; and affirmed the judgment upholding the tax. Implicit in this decision was a determination that the water rights were located outside the boundaries of the district.

In *San Francisco* v. *County of Alameda*, 5 Cal.2d 243 [54 P.2d 462], the court considered the taxability of water rights which the city and county of San Francisco had purchased from the Spring Valley Water Company; presumably the rights of that company which were involved in the prior case of *Spring Valley Water Co.* v. *County of Alameda, supra*, 88 Cal.App. 157. The plaintiff city and county claimed that these rights were exempt from taxation; that they were neither "lands" nor "improvements thereon" within the meaning of the aforementioned exception to the constitutional tax exemption. These contentions were overruled and the judgment upholding the tax upon the plaintiff's water rights was affirmed. Implicit in this decision was the determination that the water rights in question were located outside of the city and county of San Francisco.

Another authoritative case is *Alpaugh Irr. Dist.* v. *County of Kern*, 113 Cal.App.2d 286 [248 P.2d 117], in which the plaintiff district brought an action against the defendant county to recover taxes paid under an assessment levied upon ground water rights. Judgment in favor of the defendant was sustained. The plaintiff district was located in a county adjoining the defendant; however, it owned land in the defendant county from which it pumped water and transported the same to the adjoining county where it was delivered to land located within the plaintiff district. The court held that the water rights in question were appropriative or prescriptive rights; that they were properly assessed separately from the land upon which the pumping took place; and that they were not exempt from taxation under the Constitution. Implicit in this decision is a holding that the situs of these water rights was in the county in which the pumping took place.

The fact that in some of the foregoing cases the water rights considered were of riparian origin, while in others they were of prescriptive or appropriative origin does not detract from the applicability of the decisions in those cases to the case at bar. In each of them the water rights under consideration were determined to be "land" within the meaning of the Constitution. In each of them the water which was subject to those rights was being put either to a nonriparian or non-overlying-land use. In the instant case, the water which is the subject of the rights here under consideration flows in the Kern River. It is being diverted and put to nonriparian use. Whether the right to divert this water for such use originated by grant from the riparian owners, or by prescription, or by appropriation of a surplus has no reasonable relationship to the situs of such rights for the purpose of taxation.

Plaintiff's contention that the decisions in *San Francisco* v. *County of Alameda, supra,* 5 Cal.2d 243, and *Waterford Irr. Dist.* v. *County of Stanislaus, supra,* 102 Cal.App.2d 839, are not applicable to the case at bar, because the restriction imposed upon the place of use of the water diverted under its water rights is not present in those cases, is without merit. As will be noted hereafter, the reasons advanced for and the principles applied in those decisions are equally applicable to the water rights under consideration in the instant case.

The constitutional provisions which except from tax exemption the lands of municipal corporations located outside of such corporation was adopted by amendment in 1914. Respecting this amendment, the court in *San Francisco* v. *County of Alameda, supra,* 5 Cal.2d 243, 246, said,

"The argument sent to the electors of the state when the amendment was proposed also discloses that, unless the amendment be adopted, impending disaster would result to smaller counties by the removal from the local tax rolls of lands and water rights acquired and to be utilized in connection with the acquisition or extension of municipal water supplies such as were then in progress by the City and County of San Francisco and the city of Los Angeles. The adoption of the amendment was evidence that the acquisition of such lands and water rights should be without prejudice to the outlying counties whose existence from an economic and governmental standpoint depended upon the tax revenues derived therefrom. It was therefore provided that such lands and improvements thereon as were taxable at the time of the acquisition

of the same by municipalities should continue to be taxable and should not be exempt from local taxation. The fact that the continuing right of taxation should in some instances inure to the benefit of counties not so sorely pressed by reason of the prior exemption, is but an incident and cannot disturb the manifest and general operation of the amendment.''

It appears to us that the consideration given to the purpose of the constitutional amendment, in the foregoing cases, in determining the meaning of the term ''land'' as used therein, and in arriving at the conclusion that ''water rights'' constitute ''land'' should be applied with equal force in a determination of the location of such water rights within the meaning of that amendment. It would appear that the purpose of the constitutional amendment was to prevent the removal from tax rolls of water rights which were subject to taxation and located outside of the municipal corporation. Taking into consideration the objects and purposes of the amendment, we conclude that the situs of such water rights cannot be changed by stipulation of the parties in the grant of those rights to a municipal corporation which restricts the use of the water obtained thereby to lands within the boundaries of such corporation. A contrary result ''would subvert the purposes of the constitutional amendment and render the same ineffectual for the purposes intended.'' (*San Francisco* v. *County of Alameda,* 5 Cal.2d 243, 247 [54 P.2d 462].)

Reason dictates the conclusion that the water rights in question are located outside of the plaintiff district. The agreement by which they were acquired confers upon plaintiff the right ''to divert, transport to the district and use'' a prescribed amount of water from the Kern River for prescribed purposes at a prescribed place, to wit, within the boundaries of the district. At this juncture the distinction must be noted between water rights and the water subject to use by an exercise of such rights. The plaintiff owns the rights in question whether he uses the water or does not use the water. For this reason the place where the water may be used does not necessarily establish the situs of the rights which enable the owner to use that water at that place. In substance, the rights conferred upon plaintiff were rights to subject the corpus of water to its use. This is done by diverting water from the stream. Thereupon the corpus so diverted is transported in a canal to be used for specific purposes at a specified place. The right to subject the water in the river to plaintiff's control is exercised at the place of diversion. Every

use of water obtained from a stream, attendant upon the exercise of water rights therein, originates with and is dependent upon a diversion from the stream. The paramount right conferred by the agreement in this case is the right to divert water from the river. For tax purposes the situs of this right should be located at the place where it is exercised, i.e., at the point of diversion. This conclusion is confirmed by the holding in *Spring Valley Water Co.* v. *County of Alameda, supra,* 88 Cal.App. 157, that the place of diversion is the place of enjoyment, which, for reasons heretofore noted, applies with equal force to a prescriptive or an appropriative right as well as to a right of riparian origin.

The water rights owned by the Companies as identified in the agreement under which the plaintiff claims, were the "rights to divert water from the Kern River." These rights were not subject to restrictions respecting place of use ordinarily accompanying a diversion of stream water by a riparian owner. Stated otherwise, the water rights owned by the land company were the rights to subject the corpus of water in the Kern River to a beneficial use without restriction as to place of use. Control of the corpus of that water was accomplished by diverting it from the stream. The authority to divert was conferred by ownership of the water rights. The purpose for which the corpus thus brought under control of the Companies might be used was restricted by law; it had to be beneficial. (*City of Pasadena* v. *City of Alhambra,* 33 Cal.2d 908, 925 [207 P.2d 17]; *Alpaugh Irr. Dist.* v. *County of Kern,* 113 Cal.App.2d 286, 292 [248 P.2d 117].) The place of use was not restricted; it was anywhere. However, when these water rights were transferred to the plaintiff the Companies restricted the place of use of the corpus, i.e., the water, to land within the boundaries of the plaintiff district. To the extent of this restriction it may be said that the rights conferred upon the plaintiff were less than those owned by the Companies. However, it was the extent of these rights and not their nature that was affected by the agreement. Under established principles, when they were owned by the Companies the nature of the water rights in question fixed their situs at the place of diversion. (*Spring Valley Water Co.* v. *County of Alameda,* 88 Cal.App. 157 [263 P. 318]; *Waterford Irr. Dist* v. *County of Stanislaus,* 102 Cal.App.2d 839 [228 P.2d 341]; *Alpaugh Irr. District* v. *County of Kern,* 113 Cal.App.2d 286 [248 P.2d 117]; *San Francisco* v. *County*

*of Alameda,* 5 Cal.2d 243 [54 P.2d 462].) As the transfer to plaintiff did not change the nature of these rights their situs was not changed.

We hold that the water rights of the Companies were rights to take water out of the Kern River for beneficial use without restriction as to place of use; that these rights were sold to the plaintiff district but restrictions were imposed upon the place of use; that the situs of the Companies' water rights was at the place of diversion; that the restrictions imposed by the agreement between the Companies and the plaintiff, as a part of the transfer of those rights, did not changes the nature of the rights which were transferred or their situs for taxation purposes.

Plaintiffs also contend that, under any circumstances, its water rights were exempt from taxation under section 43508 of the Water Code. This code section, which applies to water storage districts, provides that "the . . . water rights . . . belonging to a district shall not be taxed for State and county or municipal purposes."

It is well settled that "all property must be taxed unless an exemption is authorized by the state Constitution or granted by the laws of the United States." (*Lundberg* v. *County of Alameda,* 46 Cal.2d 644, 648 [298 P.2d 1]; *First Unitarian Church* v. *County of Los Angeles,* 48 Cal.2d 419, 427 [311 P.2d 508].) In attempting to exempt all water rights of a water storage district from taxation, the provisions of section 43508 of the Water Code are invalid. Not only is there no express constitutional authority authorizing such legislation, but it also is in direct conflict with the mandate of the constitutional amendment, heretofore considered, which excepts from tax exemptions all lands, including water rights, owned by and located outside of a municipal corporation, which includes a water storage district. Pertinent to this issue are the observations of the court in *County of Mariposa* v. *Merced Irr. Dist.,* 32 Cal.2d 467, 475 [196 P.2d 920].

Although counsel for plaintiff, at the time of oral argument, stated that the determinative issue in this case was that involving the situs of the water rights subject to taxation, in the briefs herein plaintiff also contends that these rights are not taxable property, and that the court erred in failing to find upon issues of fact presented by the pleadings.

The contention that plaintiff's water rights are not taxable property is based on the claim that the provisions of the

agreement effecting transfer so impaired the rights transferred that they did not "constitute a complete property right subject to taxation." These provisions restrict the use of the water diverted under the rights conveyed, both as to place and purpose, restrict assignment of the rights transferred; and limit the transfer of the whole of the "Companies'" rights by retaining the right to all water over a maximum monthly diversion, to water not used by the plaintiff, and to waste, seepage, and ready-flow water.

As heretofore noted, the water rights owned by the Companies authorized diversion of water for nonriparian use; are not based on ownership of land; constitute appropriative or prescriptive rights within the meaning of the law in California (*City of Pasadena* v. *City of Alhambra*, 33 Cal.2d 908, 925-926 [207 P.2d 17]; are not a "part and parcel of the soil" (*Spring Valley Water Co.* v. *County of Alameda*, 88 Cal.App. 157, 167 [263 P. 318]; and, consequently, are not appurtenant to land. (*Alpaugh Irr. Dist.* v. *County of Kern*, 113 Cal. App.2d 286, 295 [248 P.2d 117].) ▮ Rights to divert water for nonriparian or nonoverlying uses are interests in real property subject to separate assessment and taxation. (*Spring Valley Water Co.* v. *County of Alameda*, 88 Cal.App. 157, 168 [263 P. 318]; *Waterford Irr. Dist.* v. *County of Stanislaus*, 102 Cal.App.2d 839 [228 P.2d 341]; *Alpaugh Irr. Dist.* v. *County of Kern*, 113 Cal.App.2d 286, 294 [248 P.2d 117]; *San Francisco* v. *County of Alameda*, 5 Cal.2d 243 [54 P.2d 462].)

▮ The inquiry propounded by plaintiff's contention is whether these rights have lost those property characteristics which would subject them to taxation because the instrument effecting their transfer limited the purpose and place of use of water obtained thereby, limited plaintiff's right of assignment and did not transfer all of the rights of the Companies.

By the Constitution, the term "property" for the purpose of taxation includes "moneys, credits, bonds, stocks, dues, franchises, and *all other matters and things*, real, personal, and mixed, capable of private ownership." (Cal. Const., art. XIII, § 1.) (Emphasis added.) The fact that the Companies retained some of the rights owned by them had no effect on the rights which they did transfer. For example, the fact that the Companies had the right to use water which the plaintiff did not use had no effect on the right of plaintiff to use that water. The right to use and actual use are two dif-

ferent things. Under the transfer agreement the plaintiff had the right to divert water from the river and subject that water to its use. Failure to exercise that right did not affect the status thereof as ''matters'' or ''things'' capable of ownership for the purpose of taxation within the meaning of the Constitution.

By the restrictions and limitations in question the transfer agreement did not purport to effect the transfer of a limited estate in the rights owned by the Companies with a remainder or reversionary interest in them, which might require a single assessment. (*Central Mfg. Dist.* v. *State Board of Equalization*, 214 Cal. 288, 293 [5 P.2d 424].) Rather, the provisions imposing restrictions and limitations upon the use and ownership of the rights transferred were a means of defining those rights and not of carving out a limited estate in the rights owned by the transferor. Separate water rights were transferred to plaintiff and separate water rights were retained by the Companies. If plaintiff's water rights are not taxable to plaintiff they are free from taxation.

The restrictions and limitations upon use and assignability did not deprive these rights of ownership characteristics to such an extent as to bring them without the definition of the term property as used in the Constitution, i.e., ''matters and things . . . capable of private ownership.''

The interest of a lessee subject to taxation under an exception to the general rule (*San Pedro etc. R.R. Co.* v. *Los Angeles*, 180 Cal. 18, 23 [179 P. 393]) is no less taxable because of limitations upon its assignability. (*Kaiser Co.* v. *Reid*, 30 Cal.2d 610, 620 [184 P.2d 879].) Restrictions respecting the place of diversion of riparian water for nonriparian use have not affected the taxability of the right to divert. (*Spring Valley Water Co.* v. *County of Alameda*, 88 Cal.App. 157 [263 P. 318]; *San Francisco* v. *County of Alameda*, 5 Cal.2d 243 [54 P.2d 462].) In *Timm Aircraft Corp.* v. *Byram*, 34 Cal.2d 632, 638 [213 P.2d 715] where taxes have been levied under an assessment against funds deposited to the plaintiff's account by the United States, pursuant to an agreement containing restrictions respecting their use, the court said, ''The imposition of reasonable restrictions upon the use of property, even the retention of legal title to secure performance of an executory contract, does not make the United States the owner of that property for tax purposes.'' By analogy the foregoing rule is applicable to the case at bar.

██ The plaintiff also contends that the judgment should be reversed because the trial court failed to find upon issues of fact raised by the pleadings. We have examined the pleadings and the findings in their entirety and conclude that this contention is without merit. Some of the objections advanced request findings upon issues of law rather than issues of fact; others misconceive the full import of the findings made; and the remainder concern issues immaterial to a decision of the case on appeal.

The plaintiff contends that the parties have construed the provisions of the transfer agreement through their operations and that the findings do not reflect a finding upon the evidence produced in support of this contention. ██ The rule that, in considering the taxability of property ''the agreement of the parties, whether express or implied, is not binding upon the taxing authorities'' (*Trabue Pittman Corp., Ltd.* v. *County of Los Angeles,* 29 Cal.2d 385, 397 [175 P.2d 512]), applies equally to a situation where it is contended that the taxability of water rights has been determined by the construction placed by the parties upon a transfer agreement conveying those rights. In any event, the finding made by the trial court respecting the nature of the water rights acquired by the plaintiff is an adequate finding upon an ultimate fact.

Judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied April 11, 1960, and appellant's petition for a hearing by the Supreme Court was denied May 25, 1960. Dooling, J. pro tem.,* participated therein in place of Spence, J.

---

*Assigned by Chairman of Judicial Council.